# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

MR. ELECTRIC CORP.,          )
                                         )

                Plaintiff,         )
                                         )

v.                                    )               No. 06-2414-CM
                                         )

REIAD KHALIL, an individual,      )
and ALBER ELECTRIC CO., INC.,     )
                                         )

               Defendants.     )
_____  )

## MEMORANDUM AND ORDER

       This is a trademark infringement, unfair competition, and breach of contract action relating to a Mr. Electric franchise agreement entered into between Mr. Electric and Khalil on February 15, 2005. Mr. Electric alleges that Khalil infringed upon Mr. Electric's federally registered trademarks and engaged in unfair competition, in violation of both the Lanham Act and Kansas common law. In his counterclaims, Khalil alleges that Mr. Electric breached the franchise agreement in violation of Kansas common law.

       This matter is before the court on cross motions for summary judgment filed by plaintiff Mr. Electric Corp. ("Mr. Electric") and defendant Reiad Khalil ("Khalil"). Plaintiff filed a partial motion for summary judgment (Doc. 279) as to the following counts: 1) count one—federal service mark infringement, under section 32 of the Lanham Act, 15 U.S.C. § 1114; 2) count two—federal unfair competition, under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); and (3) count five— common law trademark and service mark infringement and unfair competition under Kansas law. Defendant's motion for summary judgment (Doc. 282) requests summary judgment in defendant's favor on all of plaintiff's claims and on defendant's breach of contract counterclaims.

## I.     Factual Background[1]

Mr. Electric is a nationwide franchisor of an electrical repair maintenance and installation service franchise system, with more than 130 franchise locations throughout the country operating under the name and mark MR. ELECTRIC®.  Mr. Electric is the owner of three different trademarks at issue in this case, and all of the trademarks are in full force and effect.  These trademarks include the MR. ELECTRIC® mark, the MR. ELECTRIC EXPERT ELECTRICAL SERVICE® mark, and the Mr. Electric Lightbulb/Lightning Bulb Design Mark.  Mr. Electric, its predecessor in interest, and their respective franchisees have used each of these marks for over sixteen years in connection with electrical repair, maintenance, and installation services.  One of Mr. Electric's franchisees currently operates under the MR. ELECTRIC® name and mark in the Kansas City metropolitan area in Clay County, Missouri.

Plaintiff and defendant were parties to a Mr. Electric Franchise Agreement ("Agreement") dated February 15, 2005.  Pursuant to the Agreement, defendant was licensed to use Mr. Electric's proprietary marks, and was granted the exclusive right to operate as Mr. Electric's authorized franchisee servicing certain zip codes in Johnson County, Kansas.  The Agreement required defendant to remit to plaintiff royalties and other fees, to provide plaintiff with certain financial reports, and to maintain certain forms and levels of insurance.  The Agreement was a valid contract.  The Agreement stated that defendant had only a revocable license to use the marks during the franchise term and that defendant was required to cease use of the marks or any other confusingly similar designs, including telephone numbers listed under the MR. ELECTRIC® name, upon termination of the franchise.

The parties terminated the franchise relationship in April of 2006.  Mr. Electric's Assistant General Counsel wrote a letter to Khalil dated May 4, 2006, alerting him to his agreement to comply

---

[1]     The parties stipulated to the following facts in the Pretrial Order.

with all provisions of the Agreement, including the post-termination obligations. On April 1, 2006, defendant purchased and became president of Alber Electric Co., Inc. ("Alber Electric"), a business providing electrical repair, maintenance, and installation services in the Kansas City area, including Johnson County. Defendant was the president and owner of Alber Electric from at least April 1, 2006, to March 31, 2007. Defendant's responsibilities as president of Alber Electric included developing, executing, overseeing, and running operations of Alber Electric's electrical construction and renovation contracts. Defendant was also responsible for "business development and contracts" and for bookkeeping and accounting.

Khalil made use of the above-described Mr. Electric trademarks after his termination as a Mr. Electric franchisee, including for at least as long as September 22, 2006 via his "Mr. Electric of Kansas City" website ("website"), located at <<www.mrelectrickc.com>>. This use of the Mr. Electric trademarks was without authorization or permission from plaintiff.

Alber Electric used the Mr. Electric Lightbulb/Lightning Bolt Design mark in commerce in connection with advertising its business, including in a telephone directory distributed in the Kansas City area. This use was also without plaintiff's permission. Khalil oversaw the purchase and placement of at least three separate telephone directory advertisements for Alber Electric, each featuring the Mr. Electric Lightbulb/Lightning Bolt Design mark, and appearing after termination of defendant's Mr. Electric franchise. Each advertisement ran from at least May 2006 to May 2007. Mr. Electric's outside counsel sent a letter to Alber Electric demanding that the company cease and desist use of the marks and informing Alber Electric of Khalil's post-termination obligations.

Khalil, in conjunction with Alber Electric, continued to use the MR. ELECTRIC® name and marks through at least August 2006 to solicit and perform work on projects in the Johnson County area. This activity included: (a) performing service calls under the marks through use of a service van

featuring the Mr. Electric trademarks on the side and back panels of the van; (b) receiving requests for those service calls to the same telephone numbers through which Khalil operated his former Mr. Electric franchise, and notifying customers the businesses were merging; (c) continuing to use the Mr. Electric website to solicit customers; (d) entering into two commercial contracts while still a Mr. Electric franchisee, taking those jobs with him when he purchased Alber Electric, continuing to perform work on these jobs; and accepting payments for these jobs on checks made payable to "Mr. Electric of Kansas City" and depositing these checks into its bank accounts.

## II. Procedural Background

Plaintiff brought this case against two defendants—Khalil and Alber Electric. This court held a hearing on October 17, 2006, granting plaintiff's motion for preliminary injunction against both defendants and finding that plaintiff had established a substantial likelihood of success on the merits of its claim. The court entered its order of preliminary injunction on October 23, 2006. After Khalil filed for bankruptcy, the court stayed litigation as to Khalil on June 4, 2007. The court lifted the stay in April 2011 when Magistrate Judge Rushfelt determined that Khalil's bankruptcy case had been terminated.

During Khalil's bankruptcy, the case proceeded as to Alber Electric. Alber Electric consented to entry of judgment by default on all issues related to its liability in this case, but it contested damages. The court adopted Judge Rushfelt's recommendations for entry of judgment by default on November 7, 2007. After holding a hearing on damages, the court awarded damages to plaintiff, including the profits of Albert Electric in the amount of $358,277.40. The court then entered judgment in favor of plaintiff and against Alber Electric. Accordingly, defendant Khalil is the only remaining defendant.

## III. Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "If the moving party meets its burden, then it becomes the nonmoving party's burden to show the existence of a genuine issue of material fact." *Arnett v. United States*, 927 F. Supp. 1464, 1467–68 (D. Kan. 1996) (citing *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir.1991)). The nonmoving party must then go beyond the pleadings and cite to particular parts of the record, including "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" to designate specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(c)(1)(A); *see also Mares v. ConAgra Poultry Co.*, 971 F.2d 492, 494 (10th Cir.1992) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). "Unsubstantiated allegations carry no probative weight in summary judgment proceedings." *Phillips v. Calhoun*, 956 F.2d 949, 951 n.3 (10th Cir. 1992) (citations omitted).

In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex*, 477 U.S. at 327.

## IV. Plaintiff's Partial Motion for Summary Judgment (Doc. 279)

### A. Count One: Federal Service Mark Infringement

A Lanham Act trademark infringement claim under 15 U.S.C. § 1114 requires proof of three elements: (1) the marks in question are valid and protectable; (2) the defendant used the marks in

commerce without consent; and (3) the defendant's use of the marks is likely to cause confusion. *Chanel, Inc. v. PU*, No. 07-2502-KGS, 2009 WL 722050, at *4 (D. Kan. Mar. 18, 2009). Both parties agree that the first element is met. (Doc. 262 at 3, Stipulated Facts 4–9.) Therefore, only the second and third elements are at issue. Both of these elements require that *defendant* used the marks. Defendant argues that plaintiff has not shown that he is personally liable for use of the marks, and that any action defendant took was taken only in his capacity as an employee of Alber Electric.

### 1. Use of Marks by Defendant in Commerce (Second Element)

The law is well-established that an officer or agent of a corporation who directs or actively participates in the commission of a tortious act can be held personally liable. *Am. Airlines v. Christensen*, 967 F.2d 410, 417 (10th Cir. 1992) (citation omitted); *Wempe v. Sunrise Med. HHG, Inc.*, 61 F. Supp. 2d 1165, 1176 (D. Kan. 1999) (noting that "a director or officer of a corporation may be individually liable for torts that he committed or in which he participated" under Kansas law). Further, "a claim for trademark infringement may be asserted against a stockholder or officer of a corporation who is responsible for his corporation's infringing activities." *Pandaw Am., Inc. v. Pandaw Cruises India Pvt. Ltd.*, 842 F. Supp. 2d 1303, 1314 (D. Colo. 2012).

In support of the second element, plaintiff cites the following stipulated facts:

- Khalil made use of the foregoing Mr. Electric trademarks after his termination as a Mr. Electric franchisee, including for at least as long as September 22, 2006 via his 'Mr. Electric of Kansas City' website, located at <<www.mrelectrickc.com>>.

- The above use of the Mr. Electric trademarks was without authorization or permission from Mr. Electric.

- Alber Electric used the Mr. Electric Lightbulb/Lightning Bolt Design Mark in commerce in connection with advertising its business.

- The above use of the Mr. Electric Lightbulb/Lightning Bolt Design [M]ark was without authorization or permission from Mr. Electric.

- Alber Electric received a July 24, 2006 letter from Mr. Electric's outside counsel demanding that the company immediately cease and desist from all further use of the Mr. Electric Lightbulb/Lightning Bolt Design Mark and informing Alber Electric of Khalil's post-termination non-compete obligations.

- Alber Electric advertised its business services using the Mr. Electric Lightbulb/Lightning Bolt Design Mark in a telephone director distributed within the Kansas City Metropolitan area.

(Doc. 262 at 3, Stipulated Facts 10–15.)[2]  Plaintiff cites these same facts in its "Concise Statement of Material Facts" section of its brief.  (*See* Doc. 280 at 15; Facts 43–47, 49.)

Defendant responded to each of these facts as "uncontroverted," with one exception.  As to the first stipulation that Khalil made use of plaintiff's trademarks after his termination as franchisee, defendant responds "[u]ncontroverted with the clarification that Mr. Khalil's use of the marks was on behalf of his employer Alber Electric."  (Doc. 283 at 5.)  The court finds that defendant's attempted "clarification" is much more than that—it substantially changes the stipulation agreed to in the pretrial order.  Once a pretrial order is entered, it supersedes all pleadings and controls the subsequent course of the case unless the court modifies it.  Fed. R. Civ. P. 16(d); Local Rule 16.2(c).  A pretrial order may not be modified except by consent of the parties and the court's approval, or by order of the court to prevent manifest injustice.  *See* Fed. R. Civ. P. 16(e); Local Rule 16.2(c).  This standard has not been met, and defendant cannot modify its stipulation in an attempt to escape liability.

Defendant also attempts to defend his use of the Mr. Electric website and vans bearing the Mr. Electric name and marks after the termination of his franchise by stating (without citation to any facts) that "[i]t was simply a case where Alber Electric needed to use the equipment and assets Mr. Khalil had acquired during his tenure as a Mr. Electric franchisee, and those items were put to use before Alber Electric was able to relabel them with its own trademarks."  (Doc. 283 at 10.)  This statement is

---

[2]     The court considers it telling that the cited facts include facts detailing both Khalil's use of the Mr. Electric marks as well as Alber Electric's use.  If, as Khalil argues, Khalil's use was limited only to his use as owner and president of Alber Electric, there would be no reason for the two facts stipulating that Khalil himself used the marks.

significant. The court is particularly concerned with defendant's attempt to defend his actions by arguing he simply did not have time to relabel the equipment or obtain other assets. And defendant again argues that he cannot be held personally liable for these actions. This situation seems to be exactly the type courts had in mind when stating that "[a] corporate officer is individually liable for the torts he personally commits and cannot shield himself behind a corporation when he is an actual participant in the tort." *Donsco, Inc. v. Casper Corp*., 587 F.2d 602, 606 (3d Cir. 1978).

The court finds the case of *University of Kansas v. Sinks*, 565 F. Supp. 2d 1216 (D. Kan. 2008) particularly on point. There, the court noted that:

> In general, a corporate officer is personally liable for his tortious acts, just as any individual may be liable for a civil wrong . . . . When personal wrongdoing is not supported by legitimate corporate activity, the courts have assigned personal liability for wrongful actions even when taken on behalf of the corporation. However, this liability has been qualified, in extensive jurisprudence, by the distinction between commercial torts committed in the course of the officer's employment, and negligent and other culpable wrongful acts. Thus, when a person in a control position causes the corporation to commit a civil wrong, imposition of personal liability requires consideration of the nature of the wrong, the culpability of the act, and whether the person acted in his/her personal interest or that of the corporation.

*Sinks*, 565 F. Supp. 2d at 1239–40 (quoting *Braintree Labs., Inc. v. Nephro-Tech, Inc.*, 81 F. Supp. 2d 1122, 1132 (D. Kan. 2000)(additional quotations and citations omitted)).

In *Sinks*, the court noted its agreement that the defendant could "be held personally liable, separate and apart from any theory based on piercing the corporate veil." *Id*. at 1240. In denying defendant's motion for summary judgment, the court pointed to evidence that the defendant was the sole owner of the company at issue, that defendant previously owned a company that was a licensee of the plaintiff, that the defendant was denied a license after forming his company, and that a cease and desist letter was sent directly to the defendant. *Id*. The court found that this evidence was enough to persuade a reasonable jury to conclude that the defendant had "actively and knowingly caused the trademark infringement." *Id*.

The facts here are even more compelling. Defendant participated in or oversaw various infringing acts involving plaintiff's marks. Plaintiff points to evidence that, after termination of defendant's franchise in April of 2006, defendant: (1) was the president and owner of Alber Electric; (2) oversaw the purchase and placement of at least three telephone directory advertisements for Alber Electric, each featuring the Mr. Electric Lightbulb/Lightning Bolt Design Mark, and each of which ran for a year from May 2006 to May 2007; (3) continued to operate his Mr. Electric website, which included a telephone number answered as "Alber Electric"; (4) continued to use the Mr. Electric telephone number for Alber Electric (through which customers were told that the two businesses were "merging"); (5) continued to use the Mr. Electric name and marks on a service van through at least August 2006 for work done in the Johnson County area; (6) entered into two commercial contracts while still a Mr. Electric franchisee, took those jobs with him when he purchased Alber Electric, and continued to perform work on these jobs; and (7) accepted payments on checks made payable to "Mr. Electric of Kansas City" and deposited these checks into its bank accounts.

Defendant offers no additional material facts, and he largely concedes the facts put forth by plaintiff. Defendant does point to evidence that he did not design the infringing telephone book advertisements, and argues that his "passive" review of the advertisements was brief and without specific review of the content. However, defendant essentially tries to refute the facts put forth by plaintiff by stating that his actions were merely done on behalf of Alber Electric and that he should not be personally liable.

Defendant's above-described actions, although beneficial to Alber Electric, were possible because of defendant's former position as a Mr. Electric franchisee. Moreover, "a corporate official may be held personally liable for tortious conduct committed by him, though committed primarily for the benefit of the corporation." *See Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 149 (4th Cir.

1987).  Defendant, as the owner and president of Alber Electric, acted in his personal interest when he continued to use the marks and equipment he obtained while still a Mr. Electric franchisee, and he continued to perform work on contracts entered into under the Mr. Electric name.  After careful consideration of the nature of the wrong, the culpability of defendant's actions, and whether defendant acted in his personal interest or that of the corporation, the court finds that defendant has failed to show that a genuine issue of material fact exists as to his personal liability and as to his unauthorized use of plaintiff's marks.

Although defendant does point to some evidence, the evidence does not establish any *genuine* issues of material fact.  The facts and stipulations in this case speak for themselves—defendant cannot hide behind the corporation and escape liability for his active participation in the infringing acts.  Defendant's attempt to show a genuine issue of material fact on the second element fails.

## 2. Likelihood of Confusion (Third Element)

The third element requires plaintiff to show that defendant's use of the marks is likely to cause confusion.  "Although likelihood of confusion is frequently a fairly disputed issue of fact on which reasonable minds may differ, the issue is amenable to summary judgment in appropriate cases." *See King of the Mountain Sports, Inc. v. Chrysler Corp.*, 185 F.3d 1084, 1089 (10th Cir. 1999) (internal quotation omitted).  Defendant's response only addressed the issue of his personal liability and whether he used plaintiff's marks without consent; defendant did not address the likelihood of confusion element.

In support of this element, plaintiff puts forth three separate theories.  First, plaintiff asserts that defendant is jointly and severally liable with Alber Electric for his own infringing acts.  Second, plaintiff contends that defendant is liable because the franchisor/ franchisee relationship gives rise to a

high degree of likely confusion upon termination of that relationship.  Third, plaintiff claims that

defendant is liable under the Tenth Circuit's six-factor likelihood of confusion test.

      **a)**        **Joint and Several Liability**

      As to plaintiff's first theory, plaintiff cited no case law holding that establishing a defendant's

joint and several liability for infringing acts can show that a likelihood of confusion exists.  Instead,

the analysis of a corporate officer or director's personal liability is better-suited to determining under

the second element whether the defendant in fact made use of the marks.  Many of plaintiff's

arguments under this theory are addressed above under the second element.  Thus, this theory is not

addressed here, and it is not sufficient—by itself—to establish the third element on the briefing before

the court.

      **b)**        **Continued Use of Marks After Termination of Franchisor/ Franchisee Relationship**

      In support of its second theory, plaintiff cites to various cases highlighting the strong risk of

consumer confusion when an ex-franchisee continues to use the former franchisor's trademarks.  *See,*

*e.g.*, *Bad Ass Coffee Co. v. Bad Ass Coffee Ltd. P'ship*, No. 2:99-CV-00150, 2000 WL 33710901, at

\*7  (D. Utah Feb. 24, 2000), *aff'd*, 15 F. App'x. 738 (10th Cir. 2001).  The Second Circuit addressed a

similar situation in *Church of Scientology International v. Elmira Mission*, 794 F.2d 38, 44 (2d Cir.

1986) stating that:

> A licensee or franchisee who once possessed authorization to use the trademarks of its
> licensor or franchisor becomes associated in the public's mind with the trademark
> holder. When such party, as defendants here, loses its authorization yet continues to use
> the mark, the potential for consumer confusion is greater than in the case of a random
> infringer. Consumers have already associated some significant source identification
> with the licensor. In this way the use of a mark by a former licensee confuses and
> defrauds the public.

(citing *Burger King Corp v. Mason*, 710 F.2d 1480, 1493 (11th Cir. 1983) (noting that continued trademark use by an ex-franchisee satisfies the likelihood of confusion test and constitutes trademark infringement) (other citations omitted)).

Similarly, the Sixth Circuit has held that "proof of continued, unauthorized use of an original trademark by one whose license to use the trademark had been terminated is sufficient to establish 'likelihood of confusion.'" *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1190 (6th Cir. 1997) (finding district court's conclusion that plaintiff satisfied the likelihood of confusion test without individually considering the six likelihood of confusion factors was appropriate). And the Eleventh Circuit came to a similar conclusion in *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1310 (11th Cir. 1998), finding a "certainty of confusion" when an ex-franchisee continued to use the franchisor's marks after termination of the franchise.

The facts stated above under the second element demonstrate defendant's continued use of plaintiff's marks after termination of his franchise. Although some of these actions were taken "on behalf of" Alber Electric, defendant is personally liable for the actions as described above. The court finds that the likelihood of confusion is strong in this case, where defendant—all after his franchise was terminated—continued to use the Mr. Electric website and telephone number, used a Mr. Electric van bearing plaintiff's marks to respond to service calls, approved advertisements bearing plaintiff's marks, and continued work for at least two Mr. Electric clients.

### c) Six-Factor Test

In addition to plaintiff's second theory, plaintiff's final argument on this element also establishes a likelihood of confusion. Plaintiff's third theory encompasses the six-factor test

used by the Tenth Circuit. *See King of the Mountain Sports, Inc.*, 185 F.3d at 1089–90 . The

factors are non-exhaustive, and no one factor is dispositive. *Id.* at 1090. The factors include:

> (i) the degree of similarity between the marks;
> (ii) the intent of the alleged infringer in adopting its mark;
> (iii) evidence of actual confusion;
> (iv) the relation in use and the manner of marketing between the goods or services
> marketed by the competing parties;
> (v) the degree of care likely to be exercised by purchasers; and
> (vi) the strength or weakness of the marks.

*Id.* at 1089–90.

### i.    Degree of Similarity Between the Marks

This factor requires little discussion. Defendant stipulated that the marks used by him

and Alber Electric were the Mr. Electric marks. Thus, the marks are identical and it can easily

be determined that "the alleged infringing mark will be confusing to the public." *See*

*Packerware Corp v. Corning Consumer Prods. Co.*, 895 F. Supp. 1438, 1448 (D. Kan. 1995).

This factor weighs heavily in favor of finding a likelihood of confusion. *See Australian Gold,*

*Inc. v. Hatfield*, 436 F.3d 1228, 1240 (10th Cir. 2006).

### ii.    Defendant's Intent

The deliberate use of a similar mark may lead to an inference of intent to create

confusion. *See Beer Nuts, Inc. v. Clover Club Foods Co.*, 805 F.2d 920, 927 (10th Cir. 1986).

Further, "[t]he inference of intent is especially strong when the parties have had a prior

relationship" and "[s]uch a relationship provides evidence of the alleged infringer's intent to

trade on the plaintiff's goodwill." *Id.* (citation omitted). In *Beer Nuts*, the court found the fact

that the defendant distributed the plaintiff's products for many years before developing its own

similar product, had knowledge of the plaintiff's trademark and the popularity of the plaintiff's

product, sold its product in the same markets as the plaintiff, and used a similar name and

package for its product made it clear that the defendant deliberately adopted a similar mark to the plaintiff's. *Id*. Accordingly, the court found that intent could be inferred. *Id*. at 928.

The same is true here. Plaintiff has put forth evidence that defendant willfully and intentionally continued to use and infringe plaintiff's marks after termination of his franchise. Plaintiff's evidence shows that defendant had knowledge of plaintiff's marks, performed the same services in the same market, and that defendant continued use of plaintiff's marks, together with Alber Electric, in advertisements, online, and on defendant's service van. Defendant admits this use, but simply states he is not personally liable or that he did not have time to relabel his van and other equipment. Defendant's intent to cause confusion can be inferred from these facts and from the parties' former relationship as franchisor and franchisee. Thus, this factor weighs in favor of finding a likelihood of confusion.

### iii. Actual Confusion

Although evidence of actual confusion weighs in favor of finding a likelihood of confusion, absence of such evidence does not necessarily mean that no likelihood of confusion exists, especially when the products at issue are inexpensive. *Id*. at 927. Plaintiff admits it has no evidence of actual confusion. This factor is neutral.

### iv. Similarity in Services and Manner of Marketing

In most cases, "[t]he greater the similarity between the products and services, the greater the likelihood of confusion." *King of the Mountain Sports, Inc.*, 185 F.3d at 1092 (internal quotation omitted). Plaintiff has put forth evidence demonstrating that defendant, under Alber Electric, rendered electrical repair and installation services identical to those offered by Mr. Electric. In addition, defendant and Mr. Electric used identical marks to market their services. Accordingly, this factor weighs in favor of finding a likelihood of confusion.

### v. Degree of Care Exercised by Purchasers

When analyzing the degree of care exercised by purchasers, the Tenth Circuit has stated that "[b]uyers typically exercise little care in the selection of inexpensive items that may be purchased on impulse" and that "these items are more likely to be confused than expensive items which are chosen carefully." *Beer Nuts*, 805 F.2d at 927 (internal quotation omitted). Plaintiff puts forth no evidence regarding this factor, but instead argues that both parties targeted the same customers. Plaintiff argues, and the court agrees, that the services offered by both parties are relatively inexpensive and usually purchased sporadically, often in an emergency situation with limited time to compare providers. Yet, because plaintiff offered no evidence on this factor, the court gives it little weight.

### vi. Strength or Weakness of the Marks

The stronger the mark, the greater the likelihood that encroachment on the mark will cause confusion. *King of the Mountain Sports, Inc.*, 185 F.3d at 1093. "A strong trademark is, by definition, a trademark that triggers an immediate association with one particular source, and that association carries over to the *same mark or a similar one* used on other goods or services." *1-800 Contacts, Inc. v. Lens.com, Inc.*, 755 F. Supp. 2d 1151, 1181 (D. Utah 2010) (internal quotation omitted). Thus, when a competitor uses the same or a similar mark on its goods or services, the strength of the mark factor gives rise to a likelihood of confusion. *Id.*

This is the case here. The stipulated facts establish that plaintiff's marks have been in continuous use for over sixteen years. Plaintiff submits evidence that plaintiff and its franchisees invest significant time, effort, and money in advertising and marketing its marks and services. Further, plaintiff claims that its marks "enjoy wide public acceptance and association with [plaintiff] and has [sic] come to be recognized widely and favorably by the

public as an indicator of the origin of the services" provided by plaintiff. (Doc. 280 at 30.) Plaintiff also puts forth evidence that the marks are distinctive and have achieved significant secondary meaning and fame.

Defendant attempts to controvert this evidence by arguing that the declarant, as Chief Operating Officer of Mr. Electric, is only stating a biased opinion and that plaintiff has offered no analytical data to support its position. Defendant points to no evidence in the record showing that a genuine issue of material fact exists regarding the strength of plaintiff's mark. Defendant admits that he used marks identical to plaintiff's, and plaintiff has shown evidence that its marks are strong. Accordingly, this factor weighs in favor of finding a likelihood of confusion.

After weighing the six factors, the court finds that they overwhelmingly support a finding of likelihood of confusion. In sum, both plaintiff's second and third theories lead to a finding of a likelihood of confusion as a matter of law. Plaintiff has provided proof of defendant's continued, unauthorized use of its marks by defendant after termination of his franchise and this establishes a likelihood of confusion. Moreover, the balance of the six-factor test weighs heavily in favor of finding a likelihood of confusion.

For the reasons stated above, plaintiff has shown that there is no genuine issue as to any material fact that: (1) the marks in question are valid and protectable; (2) defendant used the marks in commerce without consent; and (3) defendant's use of the marks is likely to cause confusion. Defendant failed to show that a genuine issue of material fact exists as to any of these elements. Accordingly, plaintiff is entitled to summary judgment as a matter of law on count one.

**B.    Count Two—Federal Unfair Competition; Count Five—Common Law Trademark and Service Mark Infringement and Unfair Competition**

Federal trademark infringement and unfair competition claims have nearly identical elements. *Utah Lighthouse Ministry v. Found. for Apologetic Info. & Research*, 527 F.3d 1045, 1050 (10th Cir. 2008) (citations omitted). Unfair competition under section 43(a) of the Lanham Act requires proof that (1) the mark is protectable, and (2) defendant's use of the mark is likely to cause confusion among consumers. *Triple-I Corp. v. Hudson Assoc. Consulting, Inc.*, 713 F. Supp. 2d 1267, 1285 (D. Kan. 2010). Likewise, common law trademark infringement claims and unfair competition claims share the same elements as their federal counterparts. *See Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1219 (10th Cir. 2004) (stating elements for common law trademark infringement claim); *Triple-I Corp.* at 1286 (stating elements for common law unfair competition claim).

Because the elements have been met for a federal trademark infringement claim under the Lanham Act (as outlined above), the elements for each of the claims in counts two and five are met as well—the mark is protectable, defendant used the mark in commerce without consent, and there is a likelihood of consumer confusion. For the same reasons that plaintiff is entitled to summary judgment on its federal trademark infringement claim, it is also entitled to summary judgment on each of the claims contained in counts two and five.

**V.    Defendant's Motion for Summary Judgment on Plaintiff's Claims (Doc. 282)**

Defendant moves for summary judgment on all of plaintiff's claims in this case. As is stated above, plaintiff's claims in counts one, two, and five contain no genuine issues of material fact and plaintiff is entitled to judgment as a matter of law on these counts. Although there are no genuine issues of material fact, this does not mean that defendant is entitled to judgment as a matter of law. Plaintiff put forth sufficient evidence to support its claims. Much of this evidence came in the form of

stipulations contained in the pretrial order. Defendant fails to refute the majority of this evidence, let alone meet his burden on his own motion for summary judgment.

Defendant also failed to satisfy his burden as to plaintiff's breach of contract claims in counts three and four. Defendant failed to establish that no genuine issue of material fact exists. He instead argued that plaintiff's alleged breach during the existence of the franchise meant there was no contract in place for defendant to breach post-termination of the franchise. Even if defendant had met his burden, plaintiff showed a genuine issue of material fact as to its willingness to perform under the contract, as well as defendant's breach of contract. Accordingly, defendant's motion for summary judgment on all of plaintiff's claims is denied.

## VI. Defendant's Motion for Summary Judgment on Defendant's Counterclaims (Doc. 282)

Defendant brings three counterclaims for breach of contract. Under Kansas law, breach of contract requires the following elements: "(1) the existence of a contract between the parties; (2) consideration; (3) the plaintiff's performance or willingness to perform in compliance with the contract; (4) defendant's breach of the contract; and (5) that plaintiff was damaged by the breach." *Britvic Soft Drinks, Ltd. v. ACSIS Techs., Inc.*, 265 F. Supp. 2d 1179, 1187 (D. Kan. 2003) (citation omitted). For each of defendant's counterclaims, there is no genuine dispute of material fact as to the first two elements—the parties agree there is a contract and consideration.

As to the remaining elements on each of his counterclaims, defendant argues that there is no genuine dispute of material fact and that he is entitled to judgment as a matter of law. The court disagrees. The majority of the evidence cited by defendant in support of his claim fails to establish that there is no genuine dispute of material fact. Even if defendant had met his burden, plaintiff properly controverted each material fact. For the reasons below, defendant's motion for summary

judgment on each of his counterclaims is denied.  Further, partial summary judgment is granted to plaintiff on defendant's third counterclaim.

### A.      Counterclaim One: Failure to Train

Defendant's first counterclaim asserts that plaintiff failed to train defendant in "the fundamental marketing and managerial skills necessary to operate a successful Franchise in accordance with the System" as required by Section 4(A) of the Agreement.  Although defendant did attend what he refers to as an "informational meeting" at the Mr. Electric home office in Waco, Texas, prior to launching his Mr. Electric franchise, defendant contends that this meeting failed to teach him the skills required by the Agreement.  Defendant also contends that plaintiff failed to provide "follow up" training, even when plaintiff realized that defendant's business was in trouble.

To support his contention that he was willing to perform under the Agreement, defendant cites to his own deposition.  He cites a passage describing a "graduation" or "ending ceremony" event that took place after the training or "informational meeting" defendant attended in Waco, and to defendant's statement at the ceremony that "I'm going to succeed."  (Doc. 282-2 at 42:15.)  When asked during his deposition why he would make this statement if he felt he had been improperly trained, defendant stated, "I had paid money.  I had to succeed.  I paid them a lot of money and they promised that they're going to make you success [sic], so I said I will succeed."  (*Id*. at 42:18-20.) This passage does not establish that defendant was willing to perform his obligations under the Agreement; instead, it seems to merely show that defendant intended to be a successful franchisee. Even if the cited passage did support defendant's contention, plaintiff provides proper controverting evidence.  Plaintiff cites additional passages from defendant's deposition, where defendant stated that he was exaggerating in his speech at the event, that he did not believe in the Mr. Electric "proven system," and that his statements were not accurate.  (Doc. 284-3 at 45:8-47:1; 48:19-21.)

The other elements of this counterclaim—breach by Mr. Electric for failure to train, and damage to defendant—fail for similar reasons. The facts cited in support of defendant's claim that plaintiff failed to train him did not show a failure to train. Instead, the "facts" essentially reflect defendant's belief that the multi-day event in Waco, Texas, was more of a "seminar" or "informational meeting." In response, plaintiff provides multiple examples of the training provided to defendant, including a pre-training session and the formal training in Waco, Texas, which consisted of workshops, lectures, handouts, videos, and role-playing exercises. In addition, plaintiff points to follow-up contacts with defendant via field visits by the Mr. Electric Franchise System Manager and other examples of support plaintiff provided to defendant. Accordingly, defendant has not shown that there is no genuine issue of material fact regarding his first counterclaim for failure to train. Summary judgment on counterclaim one is denied.

**B.      Counterclaim Two: Failure to Provide On-Going Support and Sales Analysis**

For many of the same reasons as stated above regarding counterclaim one, this counterclaim is also denied. Plaintiff has properly controverted defendant's claims that plaintiff breached the Agreement by failing to provide ongoing support and sales analysis. Plaintiff cites evidence suggesting that defendant received this support and analysis. Plaintiff also provides evidence of its efforts to perform an audit of defendant's franchise to assist defendant and provide additional assistance. Defendant has failed to show there is no genuine issue of material fact regarding his second counterclaim. Accordingly, summary judgment on counterclaim two is denied.

**C.      Counterclaim Three: Failure to Maintain Confidentiality**

To support his claim that plaintiff breached the Agreement by failing to maintain confidentiality, defendant cites to his deposition testimony stating that plaintiff shared his financial information with an auditor, another Mr. Electric franchisee, supply houses, and Home Depot without

his consent. Defendant also states that he interprets Section 4(D) of the Agreement, governing confidentiality, to require plaintiff to obtain his consent before releasing his financial information to any third parties, including Mr. Electric franchisees. That section states:

> Confidentiality. Franchisor may share Franchisee's financial information with Franchisor's franchisees and Franchisor's affiliate's franchisees through the use of newsletters, bulletins, award ceremonies, and otherwise as Franchisor deems necessary or advisable. Franchisee's financial information shall not be disclosed to any other third party without protecting Franchisee's identity unless Franchisee consents in advance of the disclosure, or as may be required in response to lawful judicial process or any governmental investigation.

(Doc. 1-1 at 9.)

As to any disclosure of defendant's financial information to another Mr. Electric franchisee, this portion of defendant's counterclaim simply cannot stand. The clear language of the contract states that plaintiff may share this information with other Mr. Electric franchisees. Moreover, plaintiff cites to a portion of defendant's deposition in which he (although tentatively) agrees that there is nothing in the Agreement preventing plaintiff from providing the information to other franchisees. (*See* Doc. 284-3 at 117:5-118:6; 118:16-119:5.)

The court thus grants partial summary judgment to plaintiff on this counterclaim as to defendant's claim regarding plaintiff's release of financial information to another franchisee. See Fed. R. Civ. P. 56(a) (noting that a party may seek summary judgment on part of a claim); 56(f)(1) (noting that a court may grant summary judgment for a nonmovant); *Kannady v. City of Kiowa*, 590 F.3d 1161, 1170 (10th Cir. 2010) ("A district court may grant summary judgment on a ground not formally raised in a summary judgment motion, so long as the losing party was on notice that she had to come forward with all of her evidence.") (internal quotation omitted).

There is no prejudice here, as defendant has moved for summary judgment on the issues on which the court grants summary judgment. *See id*. ("When a district court's sua sponte determination

is based on issues identical to those raised by a moving party, the risk of prejudice is significantly lowered because the judge already is engaged in determining whether a genuine issue of material fact exists and the parties have been given an opportunity to present evidence designed either to support or refute the request for the entry of judgment.") (internal quotation omitted).

As to any disclosure of defendant's financial information to third parties other than franchisees, plaintiff has pointed to evidence which properly controverts this claim. Defendant is not entitled to judgment as a matter of law on the remainder of this counterclaim and summary judgment in thus denied. **To be clear**, the only portion of this counterclaim on which summary judgment is granted in part (in plaintiff's favor) is defendant's claim that plaintiff disclosed his financial information to another franchisee.

**IT IS THEREFORE ORDERED** that plaintiff's motion for partial summary judgment (Doc. 279) is granted.

**IT IS FURTHER ORDERED** that defendant's motion for summary judgment (Doc. 282) is denied.

**IT IS FURTHER ORDERED** that partial summary judgment is granted in plaintiff's favor on defendant's third counterclaim, **but only** as to defendant's claim that plaintiff disclosed his financial information to another franchisee.

Dated this 6th day of February 2013, at Kansas City, Kansas.

__s/ Carlos Murguia_____
**CARLOS MURGUIA**
**United States District Judge**