**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **MR. ELECTRIC CORP.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | No. 06-2414-CM |
| | ) | |
| **REIAD KHALIL, an individual,** | ) | |
| **and ALBER ELECTRIC CO., INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## MEMORANDUM AND ORDER

This matter is before the court on plaintiff Mr. Electric Corp. ("Mr. Electric")'s Motion for an Award of its Attorneys' Fees and Costs (Doc. 297). For the reasons below, Mr. Electric's motion is granted in part and the court awards fees in the amount of $351,634.50. Mr. Electric is entitled to recover its taxable costs and may file its Bill of Costs as described below.

**I.     Factual Background**

This is a trademark infringement, unfair competition, and breach of contract action relating to a Mr. Electric franchise agreement entered into between Mr. Electric and defendant Reiad Khalil ("Khalil") on February 15, 2005. Mr. Electric alleged that Khalil infringed upon Mr. Electric's federally registered trademarks and engaged in unfair competition, in violation of both the Lanham Act and Kansas common law. These claims arise from defendant Alber Electric Co., Inc. ("Alber Electric")'s and Khalil's use of Mr. Electric's trademarks after termination of the franchise agreement. Khalil filed counterclaims alleging that Mr. Electric breached the franchise agreement in violation of Kansas common law.

**II.    Procedural Background**

Mr. Electric brought this case against two defendants—Khalil and Alber Electric. This court held a hearing on October 17, 2006, granting Mr. Electric's motion for preliminary injunction against both defendants and finding that Mr. Electric had established a substantial likelihood of success on the merits of its claim. The court entered its order of preliminary injunction on October 23, 2006. After Khalil filed for bankruptcy, the court stayed litigation as to Khalil on June 4, 2007. The court lifted the stay in April 2011 when Magistrate Judge Rushfelt determined that Khalil's bankruptcy case had been terminated.

During Khalil's bankruptcy, the case proceeded as to Alber Electric. Alber Electric consented to entry of judgment by default on all issues related to its liability in this case, but it contested damages. The court adopted Judge Rushfelt's recommendations for entry of judgment by default against Alber Electric on November 7, 2007. After holding a hearing on damages, the court awarded damages to Mr. Electric, including the profits of Alber Electric in the amount of $358,277.40, plus costs ("Alber Electric Judgment"). Thereafter, Mr. Electric filed a motion asking for an award of its attorneys' fees against Alber Electric. The court found the motion was premature, as Mr. Electric's Lanham Act claims were alleged jointly and severally against both defendants and Mr. Electric's claims against Khalil were still pending. The court denied the motion without prejudice (Doc. 216).

On February 6, 2013, the court entered a Memorandum and Order ("Order") granting Mr. Electric's motion for partial summary judgment and denying Khalil's motion for summary judgment (Doc. 288). In addition, the Order granted partial summary judgment in Mr. Electric's favor on one of Khalil's counterclaims.

The parties then filed a joint motion narrowing the remaining unresolved claims (Doc. 294). The court entered an order on March 12, 2013, granting the joint motion (Doc. 295). That order detailed the parties' agreement that: (1) Mr. Electric was allowed to withdraw the two remaining

unsolved claims; (2) Khalil was allowed to withdraw his three remaining unresolved counterclaims; (3) Alber Electric and Khalil consented to a judgment providing that: (i) both defendants are jointly and severally liable for the full amount of the Alber Electric Judgment; (ii) they will be subject to an injunction making permanent the provisions of the preliminary injunction in this matter (Doc. 16); (iii) they will forego pursuit of any appeals or challenges to the Alber Electric Judgment; and (iv) Alber Electric will withdraw with prejudice all post-trial motions relating to the Alber Electric Judgment; and (4) in exchange for the above agreements made by defendants, Mr. Electric agreed to forego any claims to enhance the Alber Electric Judgment. Finally, the parties agreed that Mr. Electric could pursue its claims for attorneys' fees and costs against defendants.

### III. Legal Standard

Under the Lanham Act, the court has discretion to award attorneys' fees to a prevailing party in "exceptional cases." 15 U.S.C. § 1117(a); *Nat'l Ass'n of Prof'l Baseball Leagues, Inc. v. Very Minor Leagues, Inc.*, 223 F.3d 1143, 1146 (10th Cir. 2000) ("[E]ven in exceptional cases, the award of attorney fees is vested in the discretion of the district court."). An "exceptional case" under Tenth Circuit law "is one in which the trademark infringement is malicious, fraudulent, deliberate, or willful." *Univ. of Kan. v. Sinks*, 2009 WL 3191707, at *1 (D. Kan. Sept. 28, 2009) (citing *W. Diversified Servs., Inc. v. Hyundai Motor Am., Inc.*, 427 F.3d 1269, 1273 (10th Cir. 2005)) (internal and other citations omitted). After a case is deemed an "exceptional" one, the court must then determine whether the request for attorneys' fees is reasonable. *Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1202 (10th Cir. 1998).

### IV. Analysis

#### A. Whether This is an "Exceptional Case"

It is undisputed that Mr. Electric was the prevailing party in this case. Instead, the parties dispute whether this is an "exceptional case." Both parties cite the legislative history underlying 15 U.S.C. § 1117(a) and the rationale for awarding attorneys' fees. Specifically, Mr. Electric points to the portion stating that "[d]eliberate and flagrant infringement of trademarks should particularly be discouraged in view of the public interest in the integrity of marks as a measure of quality of products" and that "[i]t would be unconscionable not to provide a complete remedy including attorney fees for acts which courts have characterized as malicious, fraudulent, deliberate, and willful." (Doc. 298 at 13 (citing S. Rep. No. 93-1400 (1974), *reprinted in* 1974 U.S.C.C.A.N. 7132, 7136).) Defendants point to authority from the Third Circuit stating that the legislative history allows an award of attorneys' fees "where justified by equitable considerations." (Doc. 302 at 2 (citing *Securacomm Consulting, Inc. v. Securacom, Inc.*, 224 F.3d 273, 281 (3d Cir. 2000) (citation omitted)).)

Here, the court found that the (largely stipulated) facts of this case supported a finding that both defendants acted willfully and deliberately. First, Alber Electric's consent to the entry of default judgment against it meant that the allegations in Mr. Electric's complaint against Alber Electric are taken as true. *See Beck v. Atl. Contr. Co.*, 157 F.R.D. 61, 64 (D. Kan. 1994) (citation omitted). This includes Mr. Electric's allegations that Alber Electric acted intentionally, willfully, and in bad faith. *See id.* (accepting as true the plaintiff's allegations that the defendant acted willfully after determining that the defendant was in default).

In addition, the court's findings in both the damages hearing and its Order on the summary judgment motions further support the conclusion that both defendants' conduct was willful and deliberate. The court need not repeat these facts in detail again. Instead, the court notes that its Order recited facts—many of which were stipulated to by the parties—that establish the willful and

intentional actions of both defendants. (Doc. 288 at 3, 6–7, 9–10, 14.) The Order clearly stated that "[t]he facts and stipulations in this case speak for themselves—[Khalil] cannot hide behind the corporation and escape liability for his active participation in the infringing acts." (*Id.* at 10.) Further, the court stated that Khalil, "as the owner and president of Alber Electric, acted in his personal interest when he continued to use the marks and equipment he obtained while still a Mr. Electric franchisee, and he continued to perform work on contracts entered into under the Mr. Electric name." (*Id.*)

> To make matters even more clear, the court stated that:
>
> [Mr. Electric] has put forth evidence that [Khalil] **willfully and intentionally** continued to use and infringe [Mr. Electric]'s marks after termination of his franchise. [Mr. Electric]'s evidence shows that [Khalil] had knowledge of [Mr. Electric]'s marks, performed the same services in the same market, and that [Khalil] continued use of [Mr. Electric]'s marks, together with Alber Electric, in advertisements, online, and on [Khalil]'s service van. [Khalil] admits this use, but simply states he is not personally liable or that he did not have time to relabel his van and other equipment. **[Khalil]'s intent to cause confusion can be inferred from these facts and from the parties' former relationship as franchisor and franchisee.**

(*Id*. at 14 (emphasis added).) Many of these same facts were cited by the court at the damages hearing regarding Alber Electric's willfulness and bad faith.

Defendants' deliberate use of Mr. Electric's trademark after termination of Khalil's franchise, as well as Khalil's weak argument that he did not have time to relabel his van are like the arguments scoffed at by the court in the similar case of *Gorenstein Enterprises, Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431, 435–36 (7th Cir. 1989). In that case, like here, a franchisee continued using the plaintiff's trademark after the franchise was terminated. *See id*. In addressing the defendants' arguments for its continued use of the trademark, the court stated that "[s]o weak are the [defendants'] arguments regarding their infringement of [the plaintiff's] trademark, and so deliberate the infringement, that it might have been an abuse of discretion for the district judge *not* to have awarded" attorneys' fees. *Id*. at 435 (addressing—among other arguments—the defendants' argument that "they

-5-

kept on using the trademark because they were duty-bound to return the franchise in the condition in which they had obtained it, trademark and all, *after* their claim for rescission was decided"). Defendants' arguments here are similarly weak.

The above-cited evidence supports a finding that both defendants acted willfully and deliberately. Defendants' arguments to the contrary are borderline disingenuous.[1] And the legislative history above supports this finding as well. Thus, this case is an "exceptional" one, and Mr. Electric is entitled to reasonable attorneys' fees.

### B. Whether Mr. Electric's Requested Amount of Fees is Reasonable

In determining whether a requested amount of attorneys' fees is reasonable, the court calculates a lodestar amount. The lodestar figure is found by "multiplying the hours counsel reasonably spent on the litigation by a reasonable hourly rate." *Sinks*, 2009 WL 3191707, at *3. The burden is on the moving party to show entitlement to fees and to provide evidence of "appropriate hours expended and hourly rates." *Id*. The lodestar figure is presumably reasonable. *Id*. If necessary, a court may adjust the lodestar figure upward or downward. *Id*.

#### 1. Lodestar Figure

##### a. Reasonable Hours Expended

In determining the lodestar figure, the court must first determine the number of hours reasonably spent by counsel for Mr. Electric. *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1250 (10th Cir. 1998). The moving party must submit "'meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and

---

[1] Defendants first argue that the finding of "willfulness" regarding Alber Electric at the damages hearing was only in the context of awarding profits and does not apply to the context of awarding attorneys' fees. Defendants provide no legal authority for this assertion, and the court disagrees. Defendants also claim that the court addressed Mr. Electric's request for attorneys' fees at the damages hearing and declined to award them. But defendants misstate the court's ruling—the court denied the motion without prejudice and as premature. The court stated at the damages hearing that it would consider awarding fees if Mr. Electric presented a more specific request and established that the case was an exceptional one.

-6-

how those hours were allotted to specific tasks."' *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1233 (10th Cir. 2000) (quoting *Case*, 157 F.3d at 1250). In addition, a "good-faith effort" to eliminate "excessive, redundant, or otherwise unnecessary" hours is required by the prevailing party. *Sinks*, 2009 WL 3191707, at *3 (citation omitted). Finally, records that are "sloppy and imprecise" and lack adequate documentation of how large blocks of time were spent may warrant a reduction in the number of hours considered by the court. *Id.* (citation omitted).

The next step is to ensure that counsel for the prevailing party exercised "billing judgment." *Id.* This process involves assessing hours actually expended and reducing that number to one reflecting hours reasonably expended. *Case*, 157 F.3d at 1250. And then the court must examine the hours allocated to each task to determine if they are reasonable. *Id.* Factors involved in this analysis involve "the complexity of the case, the number of reasonable strategies pursued, and the responses necessitated by the maneuvering of the other side, and potential duplication of services." *Sinks*, 2009 WL 3191707, at *3 (citation omitted). Finally, the court is not required to "identify and justify each disallowed hour" or "announce what hours are permitted for each legal task." *Id.* (citation omitted).

In this case, it is important to note that Mr. Electric does not seek payment for the full amount of fees (and hours) billed to it during the six-and-a-half-year life of this case. In its motion, Mr. Electric notes the following additional ways it attempted to limit its request in the name of reasonableness: (1) not seeking payment for any non-taxable expenses; (2) not seeking payment for any fees of attorneys or other timekeepers associated with its local counsel at Armstrong Teasdale LLP; (3) not seeking payment for all of the fees of lead counsel Kilpatrick Townsend and Stockton LLP ("Kilpatrick Townsend"); (4) not seeking any travel-related fees; (5) using applicable local prevailing rates; and (6) writing off $149,472.00 in fees in an attempt to exercise good billing

judgment. Instead, Mr. Electric seeks fees incurred only by one attorney, Mr. James H. (Jay) Sullivan of Kilpatrick Townsend.

Mr. Electric's efforts in ensuring the reasonableness of its fees and hours provides some level of comfort for the court. Despite these measures taken by Mr. Electric, however, the court carefully reviewed the 71 pages of billing statements submitted by Mr. Electric to assess the reasonableness of the hours expended.

In opposing Mr. Electric's motion, defendants argue that only work directly related to Mr. Electric's Lanham Act claims is compensable under 15 U.S.C. § 1117(a). Defendants note that Mr. Electric has submitted 71 pages of "block-billed" time sheets that combine both Lanham Act-related work and non-Lanham Act-related work. Because of this, defendants argue that each entry that includes any work done for non-Lanham Act claims is not compensable. And defendants argue that this deficiency should result in denial of Mr. Electric's entire motion.

The court agrees that 51 of the 52 entries identified by defendants as containing work done for non-Lanham Act claims should be apportioned out of the total requested amount. These 51 entries total 149.6 hours. Although it argues that the Lanham Act and non-Lanham Act claims are inseparable in this case, Mr. Electric's reply tacitly acknowledges that this deletion may be appropriate. (Doc. 303 at 10, n.2.) Accordingly, the court will not award payment for these 149.6 hours. The entry cited by defendants that the court will not exclude is the entry for August 28, 2012, for 7.9 hours. (Doc. 301 at 66–67.) This entry was for time spent preparing for and conducting the deposition of Khalil. Although the entry does note that the deposition was of "Defendant/Counterclaim Plaintiff Reiad Khalil," the court will not exclude the entire entry just because a portion of the deposition covered Khalil's counterclaim.

Defendants appear to argue that because Mr. Electric's billing entries were "block-billed" that the court cannot determine the reasonableness of the time and thus the court should deny the motion altogether. But the court is satisfied that its removal of all but one of the time entries that include any mention of Khalil's counterclaims—coupled with the other measures Mr. Electric took in ensuring the reasonableness of its fee request as delineated above—alleviates any block-billing issues. *See Sinks*, 2009 WL 3191707, at *5 (stating that "[t]here is no rule in the Tenth Circuit that 'mandat[es] reduction or denial of a fee request if the prevailing party submits attorney-records which reflect block-billing'") (quoting *Cadena v. Pacesetter Corp.*, 224 F.3d 1203, 1215 (10th Cir. 2000)). Regardless, the court carefully scrutinized the time entries and finds that the number of hours spent on the tasks described is reasonable.

The court also finds that Mr. Electric exercised billing judgment in this case. Mr. Electric attached to its motion the declaration of Mr. Christopher P. Bussert ("Bussert"), a partner with Kilpatrick Townsend (Doc. 299). Bussert, the Billing and Supervisory Partner for this case, personally reviewed the billing and timekeeping records related to this matter. He notes that the fees submitted are correct and were necessarily incurred in the matter, and reflect services that were actually performed. According to Bussert, the total amount of attorneys' fees incurred by timekeepers for Kilpatrick Townsend totaled $722,984.50. Bussert states that a total of $149,472.00 in recorded time was written off in exercise of billing judgment. As a result, the total amount from Kilpatrick Townsend that was actually billed to Mr. Electric totals $573,512.50. (This does not include the amount billed by timekeepers from local counsel in an amount of $68,813.20).

Bussert also states that, at the time the motion was filed in April 2013, Mr. Electric had paid in full each amount of the invoices, except for $6,980.50 (billed in mid-March 2013). So of the total $573,512.50 billed, Mr. Electric had (at the time the motion was filed) paid $566,532.00. The fact

that Mr. Electric has paid nearly the full amount of the fees billed to it provides additional probative evidence of reasonableness. *See Case*, 157 F.3d at 1250 ("Hours that an attorney would not properly bill to his or her client cannot reasonably be billed to the adverse party, making certain time presumptively unreasonable."); *Cintas Corp. v. Perry*, 494 F. Supp. 2d 907, 908 (N.D. Ill. 2007), *aff'd*, 517 F.3d 459 (7th Cir. 2009) ("[T]he best evidence of whether attorneys' fees are reasonable is whether a party has paid the fees.").

In addition to the factors discussed above, the court has considered "the complexity of the case, the number of reasonable strategies pursued, and the responses necessitated by the maneuvering of the other side, and potential duplication of services" and finds that the amount of hours requested by Mr. Electric (after deducting the 149.6 hours for entries regarding Khalil's counterclaims) is reasonable. *See Sinks*, 2009 WL 3191707, at *3. As is stated above, Mr. Electric seeks reimbursement only for the fees billed to it by Mr. Sullivan. Through February 2013, Mr. Sullivan billed a total of 1,351.4 hours. After deducting 48.9 travel-related hours and 149.6 counterclaim-related hours, the court finds that the total number of reasonable hours amounts to 1152.9 hours.

### b. Reasonable Hourly Rate

After determining the reasonable number of hours, the court must now ascertain the reasonable hourly rate. In making this determination, the court looks to the prevailing market rates in the local community for lawyers with similar qualifications. *Case*, 157 F.3d at 1256 (citation omitted) (noting that the court should "determine what lawyers of comparable skill and experience practicing in the area in which the litigation occurs would charge for their time").

Mr. Electric asks for an hourly rate of $305.00 in this case. To support this amount, Bussert attaches to his declaration the 2012 Kansas Bar Association's Economics of Law Practice Report

("KBA Report") as evidence of the appropriate rate.[2]  (Doc. 299-3.)  Bussert's declaration and the KBA Report indicate that $305 per hour is the median hourly rate for intellectual property attorneys in Kansas.  (Doc. 299 at 7; Doc. 299-3 at 7.)  Other courts in this district have indicated that the KBA Report represents probative evidence of the prevailing rates in Kansas.  *See Sinks*, 2009 WL 3191707, at*11 (collecting cases).  After reviewing the KBA Report, the court finds it accurately represents the prevailing rates in the Kansas City area.

Bussert's declaration sets forth the experience and qualifications of Sullivan.  At the beginning of this litigation, Sullivan was a fifth-year associate with Kilpatrick Townsend.  Over the nearly seven-year duration of this case, he has progressed to his current position of Counsel.  Sullivan's practice focuses exclusively on trademark litigation.  He was responsible for the great majority of the motion practice in this case.  He was also in charge of discovery, depositions, party and court conferences, and other related work in this case.  In addition, he served as lead counsel during the damages hearings, which involved conducting examinations, preparing witnesses, and delivering the opening and closing statements.  Based on Sullivan's qualifications and his extensive involvement in this case, the court finds that the KBA Report's median hourly rate of $305 per hour for intellectual property attorneys in Kansas is an appropriate rate for Sullivan's work.  *See id*. at*11–13 (relying on the 2005 KBA Report as evidence of market rates for intellectual property and trademark attorneys in the Kansas City area).

Defendants object to the $305 per hour rate requested by Mr. Electric, arguing that Sullivan's billing rates have changed measurably over the past six years of litigation in this case. Defendants note that Sullivan's billing rates in Atlanta, Georgia, ranged from $295 per hour to $475 per hour over the course of the litigation of this case.  Defendants argue that although $305 per hour may be an

---

[2]  Bussert also attaches the American Intellectual Property Law Association ("AIPLA Report") of 2011 to his declaration.  (Doc. 299-4.)  But the court finds that the KBA Report is the most probative evidence of prevailing local market rates and thus bases its finding on the KBA Report.

-11-

appropriate rate based on Sullivan's current experience and credentials, the rate should not be applied to his work done at the beginning of the case. But, as Mr. Electric points out, the $305 per hour rate is a *median* rate, and as such is meant to represent a reasonable rate to be applied to all hours worked by Sullivan over the six-year litigation. And defendants provide no evidence (other than an unpersuasive argument comparing the ratio of Sullivan's rates in Georgia to a hypothetical rate in Kansas City) of a more appropriate rate or source. Defendants' argument fails.

After determining the reasonable number of hours expended in this case by Sullivan (1152.9) and the reasonable hourly rate ($305), the court arrives at a lodestar figure of $351,634.50.

### 2. Lodestar Adjustment and Consideration of the *Johnson* Factors

The lodestar figure is presumptively reasonable. *Sinks*, 2009 WL 3191707, at *3. Mr. Electric has gone to great lengths to ensure the reasonableness of its fee request, such as not seeking the full amount of fees billed to it in the nearly seven-year-long litigation, not seeking any non-taxable expenses, seeking payment of fees for only one attorney, and deducting any travel-related time. Bussert also wrote off a large portion of its fees in the bills sent to Mr. Electric. After considering these efforts, carefully reviewing the billing records, considering the twelve factors outlined in *Johnson v. Georgia Highway Express, Inc.*,[3] and determining a reasonable hourly rate, the court finds that no adjustment is necessary. Mr. Electric is entitled to attorneys' fees in the total lodestar amount of $351,634.50.

### C. Whether Mr. Electric is Entitled to Recover its Taxable Costs

As the prevailing party, Mr. Electric is entitled to recover its taxable costs. *See* Fed. R. Civ. P. 54(d)(1); Local Rule 54.1. Defendants' response did not address Mr. Electric's request that it be awarded costs. Mr. Electric should file its Bill of Costs and the supporting memorandum in accordance with Local Rule 54.1. Although the court determines that Mr. Electric is entitled to

---

[3] 488 F.2d 714, 717–19 (5th Cir. 1974).

recover its costs as the prevailing party, the court makes no final determination at this time regarding which specific costs requested by Mr. Electric are recoverable.[4]

**IT IS THEREFORE ORDERED** that Mr. Electric's motion for an award of its attorneys' fees and costs (Doc. 297) is granted in part. Mr. Electric is awarded attorneys' fees in the amount of $351,634.50.

**IT IS FURTHER ORDERED** that Mr. Electric is entitled to recover its taxable costs against both defendants, subject to final approval by the clerk and the court as set out in Local Rule 54.1. Mr. Electric shall file its Bill of Costs and supporting memorandum in accordance with Local Rule 54.1.

Dated this 16th day of October 2013, at Kansas City, Kansas.

<u>**s/ Carlos Murguia**</u>
**CARLOS MURGUIA**
**United States District Judge**

---

[4] Under Local Rule 54.1, the clerk considers the bill of costs in the first instance. Any objections and/or reply should be filed in accordance with Local Rule 54.1.